UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERESA BENEFIEL,

     Plaintiff,

v.                        CASE No. 8:12-CV-1315-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

     Defendant.

---

## O R D E R

    The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

    The plaintiff, who was thirty-seven years old at the time her insured status expired and who has a high school education, has worked as

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

an accounting clerk and bank teller (Tr. 34, 35, 38, 53).  She filed a claim for

Social Security disability benefits, alleging that she became disabled due to

a bulging disc, degenerative disc disease, and fibromyalgia (Tr. 151).  The

claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing

before an administrative law judge.  The law judge found that, through the

plaintiff's date last insured of December 31, 2008, the plaintiff had severe

impairments of mild degenerative disc disease of the lumbar spine, minimal

thoracolumbar scoliosis, fibromyalgia, chronic back pain syndrome, and

morbid obesity (Tr. 12).  He concluded that, through the date last insured, the

plaintiff (Tr. 14):

> had the residual functional capacity to perform a
> wide range of light work.  She had an occasional
> limitation, for bending, stooping, or crouching but
> she was able to perform[] routine tasks in an air-
> conditioned environment (20 CFR 404.1567(b)).

The law judge determined that the plaintiff could have returned to her past

positions of accounting clerk and bank teller (Tr. 19).  Alternatively, the law

judge decided, based upon testimony from a vocational expert, that other jobs

existed in significant numbers in the national economy that the plaintiff could

have performed, such as assembly - small parts, cashier II, and survey work -

telephone component (Tr. 19-20).   Accordingly, the law judge ruled that the

plaintiff was not disabled (Tr. 22).   The Appeals Council let the decision of

the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less

than twelve months."   42 U.S.C. 423(d)(1)(A).   A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant

is not disabled if she is capable of performing her previous work. 42 U.S.C.

423(d)(2)(A).   In this case, also, the plaintiff must show that she became

disabled before her insured status expired on December 31, 2008, in order to

receive disability benefits. 42 U.S.C. 423(c)(1); <u>Demandre</u> v. <u>Califano</u>, 591 F.2d 1088, 1090 (5th Cir. 1979), <u>cert</u>. <u>denied</u>, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004)(<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on two grounds. The relevant evidence on those challenges is that which has a bearing on the plaintiff's condition between October 1, 2003, the alleged disability onset date, and December 31, 2008, the plaintiff's date last insured. Evidence that either pre-dates or post-dates the pertinent period is relevant only to the extent that it sheds light on the plaintiff's condition during the period at issue. The relevant evidence does not sustain the plaintiff's challenges to the law judge's decision.

The plaintiff first contends that the law judge failed to properly assess the opinion of her treating physician, Dr. Michael Gimness (Doc. 23, pp. 8-13). This assertion does not demonstrate reversible error.

Dr. Gimness, a physician at the Bond Clinic, began treating the plaintiff on March 30, 2007 (Tr. 268). At that time, Dr. Gimness noted that the plaintiff's past medical history was significant for degenerative disc disease of L4-L5 and L5-S1, stage III obesity with a BMI of 44.4, hypertension, hyperglycemia (which resolved on subsequent testing), hypercholesterolemia, bursitis, and asthma (id.). He further noted that the plaintiff reported a "history of fibromyalgia, but it is not documented" (id.).

Dr. Gimness's physical examination of the plaintiff revealed that she had full range of motion and adequate motor strength in the extremities (Tr. 269). Her musculoskeletal system was within normal limits (id.). The plaintiff was alert, oriented times three, and in no apparent distress (id.). Tenderness to palpation was noted at L4-L5 of the lumbar spine, but otherwise the plaintiff's back was normal (id.). For the plaintiff's "questionable history of fibromyalgia," Dr. Gimness's plan included a vitamin D3 level, TSH for the malaise and fatigue, and a CBC (id.). With

-6-

regard to the plaintiff's back pain and degenerative disc disease, Dr. Gimness stated (Tr. 270):

> [W]e will be getting an x-ray of her back in November 2007 for a follow-up. She can take the glucosamine and chondroitin which is in her handout and instructed they are for the back pain as well as the Tylenol every six hours to eight hours or even every 12 hours for relief of this pain.

On April 13, 2007, the plaintiff visited the Bond Clinic for a blood pressure check (Tr. 273). Dr. Gimness indicated that the plaintiff was "currently at goal with regards to her blood pressure," and she would continue with her medication and follow-up at her next regularly scheduled appointment (id.).

The plaintiff returned to Dr. Gimness for a six-week checkup in June 2007 (Tr. 271-72). In addition to the conditions identified during the initial visit in March 2007, Dr. Gimness stated that the plaintiff had a history of hyperlipidemia and H. pylori gastritis (Tr. 271). Physical examination again showed that the plaintiff was awake, alert, oriented times three, and in no apparent distress (Tr. 272). The plaintiff had full range of motion and adequate motor strength in the extremities, and her musculoskeletal system

was within normal limits (id.).  Dr. Gimness recommended that the plaintiff

continue to work on her diet and exercise (id.).

On October 25, 2010, nearly two years after the plaintiff's date

last insured, Dr. Gimness completed a Physical Residual Functional Capacity

Questionnaire (Tr. 342-45).  On the form, Dr. Gimness noted that the plaintiff

has fibromyalgia with a fair prognosis and symptoms including fatigue and

pain in the lower back, arms, hands, legs, and feet (Tr. 342).  Dr. Gimness

stated that the plaintiff "has 5-10/10 pain in her lower back with sitting. [She]

cannot sit for prolonged periods of time" (id.).  He opined that the plaintiff's

depression and anxiety affect her physical condition; she frequently

experiences symptoms severe enough to interfere with attention and

concentration; and she is incapable of performing even "low stress" jobs due

to "poor concentration as currently not txed [treated] properly for symptoms"

(Tr. 343).  When asked to identify the clinical findings and objective signs of

the plaintiff's condition, Dr. Gimness wrote "TTP in lower back" (Tr. 342).

With respect to functional limitations, Dr. Gimness concluded

that the plaintiff could not walk more than one half of a city block without

rest, could only sit or stand for five minutes at a time, and could sit or

stand/walk for less than two hours each in an eight-hour workday (Tr. 343-44). The plaintiff needed to walk every fifteen minutes for a period of three minutes; required a position permitting shifting at will; and would have to take unscheduled rest breaks during an eight-hour workday, with the breaks lasting, on average, five minutes (Tr. 344). The plaintiff did not need a cane or other assistive device (id.). Dr. Gimness further stated that the plaintiff should elevate her legs during periods of prolonged sitting ("all the time" if she was working in a sedentary job) (id.). The plaintiff could frequently lift less than ten pounds; occasionally look down, turn her head right or left, look up, twist, and stoop (bend); rarely hold her head in a static position; and never climb ladders or stairs (Tr. 344-45). Dr. Gimness estimated that the plaintiff would be absent from work "more than four days per month" (Tr. 345). Finally, Dr. Gimness noted that the plaintiff's symptoms and limitations date back to 2006 (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence

-9-

supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.   Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge considered Dr. Gimness's opinion, but declined to give it significant weight.   Thus, the law judge explained (Tr. 18) (emphasis in original):

> I recognize that the evidence contains [a] medical opinion, years after the date last insured, that the claimant is "disabled" or "unable to work," or imposes restrictions that effectively result in a finding of incapacitation for Social Security purposes.   Specifically, on October 25, 2010, Michael Gimness, M.D., essentially found that the claimant could not sustain full-time employment. He estimated that the claimant could sit and stand or walk a total of 4 hours in an 8-hour workday. He also opined that the claimant would likely miss more than 4 days of work per month (Exhibit 12F). However, section[] 404.1527 of Regulations No. 4 provide[s] that the medical findings and other evidence must be considered in order to determine if, and to what extent, such opinion is supported. The Administrative Law Judge, on behalf of the Commissioner of Social Security, is the ultimate arbiter of work capacity for Social Security purposes, in view of specific definitions used therein.   That is, the determination of "disability" is reserved to the Commissioner, delegated to myself, on the basis of the record as a whole.   A

physician's opinion or conclusion is not controlling
in the absence of supporting evidence such as
clinical or laboratory findings or other medically
acceptable evidence.  While an assertion based on
symptoms can be evaluated, it cannot receive the
weight of one backed by objective records.  In this
case, the opinion was unique, minimally explained,
lacked supportive treatment records despite a
vague remark that he saw the claimant monthly,
contradictory to the rest of the entire medical
evidence of record, and superseded by all objective
imaging results.  The extreme restrictions, little
backed by other reports, raise questions as to the
care with which the forms were filled out.
Ultimately, the evidence failed to substantiate his
claims and is dated after the date last insured.

These reasons support the law judge's decision to discount Dr.

Gimness's opinion.  In other words, the law judge has shown good cause for

not giving that opinion considerable or substantial weight.

As the law judge noted, there is good reason to be skeptical of

the care Dr. Gimness exercised in filling out the form.  Thus, he indicated that

the plaintiff cannot sit for prolonged periods of time (Tr. 342), but also

indicated inconsistently that the plaintiff should elevate her legs during

prolonged periods of sitting (Tr. 344).  Further, Dr. Gimness stated that he

treated the plaintiff monthly (Tr. 342), but the record before the law judge

contained only three treatment notes in 2007 from Dr. Gimness (see Tr. 268-73).[3]

Contrary to the plaintiff's suggestion (Doc. 23, p. 11), a review of the record reflects that Dr. Gimness's opinion is out of line with his treatment notes. Thus, as indicated, Dr. Gimness's treatment notes state that the plaintiff was in no apparent distress and had full range of motion and adequate motor strength in her extremities (Tr. 269, 272). Further, Dr. Gimness encouraged the plaintiff to increase her exercise at the checkup in June 2007 (Tr. 272). Although Dr. Gimness's opinion includes the diagnosis of fibromyalgia (Tr. 342), he stated in 2007 that the plaintiff's fibromyalgia was "not documented" and "questionable" (Tr. 268, 269, 271).

---

[3]The plaintiff submitted additional records from Dr. Gimness and the Bond Clinic to the Appeals Council (see Tr. 4, 402-29). However, this evidence is not to be considered when determining whether the law judge's decision is supported by substantial evidence since it was not presented to the law judge. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999). The plaintiff might have made an argument under Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007), that, in light of new evidence submitted to the Appeals Council, the Appeals Council, in denying review, erred in concluding that law judge's findings are not contrary to the weight of all the evidence. No such contention was made, and thus, in view of the scheduling Order (Doc. 19, p. 2), that argument is deemed abandoned. Nevertheless, there is nothing in the additional records indicating that Dr. Gimness saw the plaintiff more than three times in 2007.

In a related argument, the plaintiff mistakenly asserts that the law judge characterized Dr. Gimness's treatment records as "unique" and "minimally explained" (Doc. 23, pp. 11-12). However, the law judge used these terms in reference to Dr. Gimness's October 2010 opinion (Tr. 18). Dr. Gimness's opinion is certainly unique in the sense that there is no other opinion like it.

Dr. Gimness's extreme opinion is also inconsistent with the substantial medical evidence of record. For example, lumbar spine imaging revealed only minimal thoracolumbar scoliosis and mild degenerative disc disease at L4-5 and L5-S1 (Tr. 262). Further, despite indicating that the plaintiff had hypesthesia on all fibromyalgia trigger points, records from the Bond Clinic in March 2008 note that the plaintiff had no swelling, deformity, or synovitis; her strength and range of motion were normal; and she complained of having fatigue, irritability, lethargy, and malaise for only three weeks (Tr. 250, 252). On September 2, 2009, after the plaintiff's date last insured, Dr. Michael Esposito noted that an MRI of the plaintiff's lumbar spine showed "[e]arly degenerative disc disease L4-5 and L5-S1. At L5-S1, there is mild bulging but there is no stenosis or impingement. Otherwise, the

-13-

study is within normal limits for age" (Tr. 295). Despite complaining of pain "all over," the plaintiff denied any weakness or difficulty walking during an examination with Dr. Matthew V. Burry in November 2009 (Tr. 296). Dr. Burry stated that the plaintiff had negative straight leg raise bilaterally, and "[n]o other motor, sensory, or reflex abnormalities [were] noted" (id.). Finally, Dr. Murthy Ravipati, a nonexamining, reviewing physician, opined that the plaintiff could have performed light work with postural and environmental limitations during the relevant period (Tr. 325-32).

The plaintiff contends that the law judge improperly discounted Dr. Gimness's opinion on "timeliness grounds." Thus, based on the law judge's statement that Dr. Gimness rendered his opinion years after the plaintiff's date last insured, the plaintiff argues that "[i]t appears that the Commissioner was not aware that the RFC form dated the restrictions to 2006, prior to the date of last insured" (Doc. 23, p. 10).

However, Dr. Gimness's attempt to relate the extreme limitations in his October 2010 questionnaire back to 2006 is totally devoid of any explanation. A justification for that opinion was clearly required given that Dr. Gimness did not even begin treating the plaintiff until March 2007 (see

Tr. 268). Accordingly, the law judge could reasonably discount Dr. Gimness's conclusory assertion that the plaintiff's condition related back to 2006.

It is appropriate to add that Dr. Gimness's opinion in October 2010 that, on or before December 31, 2008, the plaintiff could not perform any work is unpersuasive. The three treatment notes by Dr. Gimness in 2007 do not indicate that Dr. Gimness imposed any limitations on the plaintiff's functioning. Consequently, he could not reasonably opine over three years later that the plaintiff could not perform any work on, or before, December 31, 2008.

The plaintiff also asserts that the law judge improperly substituted his own opinion for that of the plaintiff's treating physician. More specifically, the plaintiff argues that the law judge is not "in a position to state that the opinion of Dr. Gimness exceeds the objective medical evidence or imaging studies" (Doc. 23, p. 12). The law judge, however, did not substitute a medical opinion but instead performed his duty to assess the evidence in accordance with the regulations. 20 C.F.R. 404.1527. Furthermore, the regulations provide that the determination of the plaintiff's functional

limitations in assessing the plaintiff's residual functional capacity is an issue reserved to the Commissioner. 20 C.F.R. 404.1527(d)(2).

The plaintiff next contends that the law judge's decision focuses on the objective evidence of her mild degenerative disc disease, but she adds that her pain and fatigue can be explained by fibromyalgia (Doc. 23, p. 12). This contention fails for several reasons.

Significantly, substantial evidence in the record calls into question whether the plaintiff even suffers from fibromyalgia. For example, the Commissioner points out that "as late as May 2009, Dr. Celestino Vega, after previously diagnosing fibromyalgia (Tr. 292-93), found Plaintiff had 'mild point tenderness' in the lower back musculature, and diagnosed 'questionable fibromyalgia' (Tr. 290-91)" (Doc. 24, p. 9). As noted, Dr. Gimness's treatment records also state that the diagnosis of fibromyalgia is "not documented" and "questionable" (Tr. 268, 269, 271).

Nevertheless, the law judge found that the plaintiff suffers from fibromyalgia. In fact, he concluded that the condition was a severe impairment. However, he also said that the record documents that the plaintiff has "possibly fibromyalgia" (Tr. 16).

-16-

"Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues." Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 695 n.1 (11th Cir. 2006). The Eleventh Circuit has noted that the hallmark of fibromyalgia is a lack of objective evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). As explained in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996):

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

The court added that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working ..., but most do not." Id. at 307.

As indicated, the law judge discounted Dr. Gimness's opinion, in part, because he determined that it was "contradictory to the rest of the entire medical evidence of record" and "superseded by all objective imaging results." Contrary to the plaintiff's suggestion, this explanation relates to the plaintiff's degenerative disc disease, a condition treated by Dr. Gimness in 2007 (see Tr. 268-70), rather than her fibromyalgia, a diagnosis that Dr. Gimness had previously described as "questionable" and "not documented." Consequently, the law judge's discussion of objective medical findings was appropriate.

Notably, "[f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." Sarchet v. Chater, supra, 78 F.3d at 307. Dr. Gimness is not a rheumatologist, but a family practitioner. Consequently, the assessment of fibromyalgia is outside Dr. Gimness's area of specialty, so that the law judge could reasonably discount Dr. Gimness's diagnosis of fibromyalgia and any functional limitations that the doctor attributed to this condition.

Moreover, there is no medical record in the administrative transcript from a rheumatologist diagnosing fibromyalgia. Typically, a

-18-

diagnosis is reflected by a figure showing the outline of a body and "x's" marked on the figure where the trigger points had been positive. There is no such diagram in this record.

There is additional medical evidence which further calls into question the diagnosis of fibromyalgia. Thus, following an examination at The Spine & Scoliosis Center on July 6, 2010, Dr. Javier A. Placer opined that "[t]he most likely source of the patient's symptoms is the spondylolisthesis," which can be diagnosed by objective testing (Tr. 338). Also after an examination on October 22, 2010, Dr. Celestino Vega merely listed as one of his assessments "Rule out fibromyalgia" (Tr. 347).

Furthermore, in order to prevail, the plaintiff must show that she had functional limitations from her fibromyalgia that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words,

-19-

it is the functional limitations that determine disability. <u>Moore</u> v. <u>Barnhart</u>, <u>supra</u>, 405 F.3d at 1213 n.6; <u>McCruter</u> v. <u>Bowen</u>, <u>supra</u>. Here, the plaintiff has not cited to any evidence, beyond the opinion of Dr. Gimness, that her fibromyalgia causes disabling functional limitations.

Finally, the plaintiff contends that the law judge improperly relied upon the opinion of Dr. Ravipati, a nonexamining, reviewing physician (Doc. 23, p. 13).   However, when the law judge properly discounts the opinion of an examining or a treating physician, the law judge may give substantial weight to the opinion of a nonexamining reviewing source who is considered an expert in Social Security disability evaluation and whose opinion is consistent with the overall record. <u>Oldham</u> v. <u>Schweiker</u>, 660 F.2d 1078, 1086 (5th Cir. 1981); <u>Milner</u> v. <u>Barnhart</u>, 275 Fed. Appx. 947, 948 (11th Cir. 2008); 20 C.F.R. 404.1527(e)(2)(i). Here, the law judge found that Dr. Ravipati's opinion is "well supported by the medical evidence" (Tr. 18). Therefore, the law judge could appropriately give more weight to the opinion of the nonexamining reviewer in this case.

As a second issue, the plaintiff argues that the law judge erred by dismissing her subjective complaints of pain and fatigue (Doc. 23, pp. 13-14). This contention is similarly meritless.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 14). Moreover, he set out the appropriate standard (id.). He even cited Landry (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision, specifically noting the plaintiff's allegations of back pain and fatigue (Tr. 15). After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to light work with additional limitations (Tr. 14). Thus, the law judge accepted the plaintiff's subjective complaints to a substantial extent, and only rejected the allegation of total disability.

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 17, 18):

> After careful consideration of the evidence, I find
> that the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

...

In sum, the above residual functional capacity assessment is supported by the medical evidence. Further, while the claimant had intermittent complaints, she seldom and inconsistently sought treatment. Moreover, since the alleged onset date, the record has large gaps absent treatment or complaints. Most importantly, no source other th[a]n Dr. Gimness found her condition would preclude all work activity or be more limiting th[a]n noted in this decision. I find the claimant's assertions and testimony regarding symptoms, including pain, and limited functional capacity not fully credible and not fully supported by the medical evidence of record. The claimant displayed little to no limitations in motion, remained neurologically intact, and exhibited nearly full range of motion on most if not all examinations. Her gait was not impaired and she used no medically recommend[ed] assistive device. The inconsistencies between the claimant's allegations and observed medical observations and objective imaging results directly question the claimant's credibility. Although I do not doubt that the claimant may experience some discomfort, I find no evidence that the claimant's symptoms are of such frequency, intensity or duration as to render

the claimant incapable of performing substantial
gainful activity on a sustained basis.

This explanation is more than adequate to discount the plaintiff's subjective

complaints.  See Heppell-Libsansky v. Commissioner of Social Security,

supra, 170 Fed. Appx. at 699.  Moreover, it is supported by substantial

evidence.

The plaintiff contends that the law judge's only reason for

discounting her credibility was the lack of objective findings to support her

allegations (Doc. 23, p. 14).  However, the lack of objective medical findings

is important.  The plaintiff had severe impairments which do have objective

findings.  Thus, the lack of greater objective findings shows that the plaintiff

did not have disabling impairments.  Further, while fibromyalgia does not

have objective findings, there is a substantial question whether the plaintiff

actually suffers from fibromyalgia.  As previously noted, one doctor opined

that the plaintiff's symptoms are most likely caused by spondylolisthesis.

Under these circumstances, the plaintiff's challenge to the law judge's

credibility determination does not get much mileage from the fact that

fibromyalgia does not have objective findings.

Moreover, as indicated by the above quotation, the law judge also discounted the plaintiff's credibility because "she seldom and inconsistently sought treatment" (Tr. 18).   Inconsistent treatment is unquestionably a valid basis for discounting the plaintiff's allegations of debilitating back pain.  The law judge found that the plaintiff had a severe impairment of mild degenerative disc disease of the lumbar spine (Tr. 12). In this regard, the plaintiff testified, "My back wouldn't allow me to get up. My husband would actually have to get me up from being in bed.  I couldn't sit up or anything" (Tr. 36).  However, as the law judge pointed out, the record contains very few treatment records for 2006 (Tr. 16).  The law judge could reasonably conclude that the plaintiff's failure to consistently obtain treatment during that period contradicted claims of incapacitating pain and other symptoms.

The plaintiff argues that her allegations of pain and fatigue are supported by her diagnosis of fibromyalgia (Doc. 23, pp. 12-13, 14).  Thus, the plaintiff asserts that "regardless of whether she had mild degenerative disc disease, the pain and fatigue of which [the plaintiff] complains can be explained by the fibromyalgia.  Even the neurosurgeon who evaluated [the

plaintiff] stated that in light of the history of fibromyalgia, surgery would not help her" (id., pp. 12-13).  However, since the law judge could reasonably conclude that the plaintiff was exaggerating her symptoms and limitations regarding her back impairment, he could similarly conclude that she was exaggerating her limitations from fibromyalgia.

Moreover, as previously explained, a mere diagnosis of an impairment is not sufficient to establish disability. Rather, it is necessary to show functional limitations from the impairments. By simply referring to the questionable diagnosis of fibromyalgia, the plaintiff fails to demonstrate how her impairment created any functional limitations beyond the law judge's residual functional capacity during the relevant period.  See Moore v. Barnhart, supra, 405 F.3d at 1213 n.6; McCruter v. Bowen, supra. Except for Dr. Gimness's opinion in October 2010 – an opinion which the law judge reasonably discounted – there is no medical opinion indicating that the plaintiff had functional restrictions greater than the law judge's residual functional capacity determination. In fact, no doctor, including Dr. Gimness, had set forth functional limitations prior to December 31, 2008, the date the plaintiff was last insured.

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 20th day of August, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE